And that is the case of People v. Kidd, Charlotte Kidd. And we have Jessica Pamone, Barney Appellant, and Rebecca McCormick for the appellate. Ms. Pamone, you may proceed. My name is Jessica Pamone. On behalf of the Office of the State Appellate Defender and I represent the appellant, Charlotte Kidd. Your Honor, this court should reduce Charlotte Kidd's domestic battery conviction to simple battery where the state failed to prove that complainants were household members of the defendant, particularly that they shared a common dwelling. The appellate court in Young held that the concept of a shared dwelling requires, and I quote, a degree of permanence. And the court went on to state that for two people to share a common dwelling is for them to stay in one place for an extended, indefinite, or regular basis. And for that reason, a host and a house guest do not share a common dwelling. The host lives there, but the guest merely lodges or stays there. And that's what we have in the instant case. Here we have the complainants merely lodging at the Kidd residence for a very temporary basis. They're staying there to save up money to get their own apartment. Their stay had no degree of permanence, and they were not living there for an extended, indefinite, or regular basis like the case law requires. At trial, there was no dispute that the kids allowed the complainants to reside there for a very short period of time until they could save money for the apartment in which they were in the process of getting. The state even concedes in its brief at page 5 and page 10 that the complainants were living there for, and I quote, a short time and were in the process of, and I quote, getting their own apartment. At trial, Alexandria admitted that the kids told them they had to vacate soon. As such, the evidence showed that they were merely temporary guests. They were not household members according to the statute. The nature of their living arrangements showed that their stay had no degree of permanence. For instance, there was no evidence that these women had keys to the house or received mail there or anything that would show that their stay had some degree of permanence. To the contrary, when Charlotte Kidd kicked the complainants out of her house, the evidence showed that they were locked out. They had no way of getting back in because they did not have keys. The only person that had a key was Charlotte Kidd's daughter, Kaylee, who allowed the police to use her key to enter the house. Now, had Charlotte and her husband provided these women with a set of keys, maybe there would be some indicia that their stay there was permanent, that they were actually really sharing this dwelling with the kids. But they were not. They were there for a very singular purpose, and that was to save money to move out. The courts are clear that the Domestic Violence Act was intended to protect intimate relationships, not merely social, casual, or business acquaintances. The Supreme Court stated that to qualify as a household member, there has to be some, and I quote, real connection beyond merely temporarily sharing the same rooms. And in the instant case, the complainants are two homeless women who got kicked out of the shelter and needed a place to stay. Charlotte opens up her home to them, and there is no evidence beyond that of any connection between the defendant and these women. She's merely doing them a favor, and there's no evidence of any ties that she had to them beforehand or after. The state put no evidence of any real connection with these women. The state in its brief argues that the complainants share responsibility for the welfare of the children in the home, but that's an overstatement of the facts. The complainant's testimony actually was that their agreement to living there in the home was that they would help out by doing certain things, and one of those things was to watch the kids. But there was no evidence that they ever did, that they were ever called upon to do so, or that even if they did, if there was any frequency or regularity to them watching the kids. Now that's one of the things that distinguishes this case from the Supreme Court case in Alamore. In that case, the victim's mother relied on the defendant to babysit her child when she went to work. So there was some regularity there. There was some frequency there in which you could infer a more intimate relationship because this child is being taken care of on a regular basis by the defendant. And in this case, we don't have that. The evidence showed that Charlotte was a stay-at-home mom, that she enjoyed watching her kids. That's what's in the PSI. So there's no evidence that she was relying on them to watch her kids every day. That was merely part of their agreement. The same way as if those women were in a shelter, there are certain things you have to do in order to stay there, certain things you have to do, certain chores, certain rules. And in this case, Charlotte says, you can save up money for an apartment, and all you have to do is agree to help me out. And these are the things that she could be called on to do, and they agreed to it because they needed a place to stay. Did Charlotte testify? No. I don't think so. No. So what you're saying Charlotte said is... I'm saying what the complainant said that she said. But I didn't see that in the record either. The complainant said that Charlotte said that they could stay there at the house as long as they agreed to help, as long as they agreed to watch the kids and help around the house. That's what they said. That was Alexandria's testimony. Mary never testified to that. Mary's testimony, according to when the state asked, was that she had met Charlotte, Mrs. Kidd, through the homeless shelter and wasn't even sure how long she'd been living there, about a month or two, maybe more. But it wasn't until cross-examination that they even delved into more of that detail. Okay, I may be mistaken on that point. Well, the reason I ask that is it didn't seem to me, correct me if I'm wrong, you have better insight. It didn't seem to me that the state or the defendant was really interested in this issue until the judge, after closing arguments, said to the defense lawyer, are you trying to raise the issue of domestic, whether these folks were domestic or household members? And the defense lawyer said, oh, yeah, that too. And then the judge made an offhanded comment saying, well, I guess two weeks in a house makes them domestic. Do you agree with that? No, because the case law says that there's no definite time that will transform someone from a house guest into a household member. And so the trial court is misapprehending the law here. But it could be as little as two weeks if there was an intent to make it indefinite. Well, you would have to consider the totality of the circumstances. That's what the Supreme Court has said, that you have to consider all these factors to determine, is this the intimate relationship that the domestic violence statute is intended to cover? Or is this merely an acquaintance, a social relationship, like as we see in Young? In People v. Young, that case, the court said that that's merely a social acquaintance situation. The victim and the defendant, they went out on a date before. They went out to eat right before the incident. They lived in the same shelter on the day of the incident. And the court said that's a social relationship. The domestic violence statute requires a little more of an intimate relationship here, like what we see in Almore, where we have the victim being babysat by the defendant. He's reliant upon the defendant for care. The mother has dated the defendant for all of the victim's life. They've lived together prior in the past. So they are operating as a unit in Almore. The connection is clear. The real connection there is clear. In this case, we have two women who need a place to stay for a short period of time, and they're staying at Charlotte's house. The state didn't put on that intimate connection, the evidence of an intimate connection in this case. Well, it appeared to me, and I may be wrong, that the mother may have needed a caretaker to watch the kids because of her drinking issues. Well, that wasn't the evidence that the state put forth. The complainants did say that Charlotte would drink. But the record shows that Charlotte was a stay-at-home mother, and on the day of the incident, she kicked them out. If Charlotte was really reliant upon them for their services, I don't see why she would kick them out if she needed them. The complainants admitted that the kids told them they had to vacate soon. The kids wanted them out, and they knew that. They knew that their stay was not permanent. There was no dispute about that at trial. While there was a dispute about how long the complainants had been in the kid residence, the Supreme Court has said that factor is not dispositive. You have to look at the totality of the circumstances, whether it was two weeks, as David testified, or whether it was one to two months, as one of the complainants testified. We still have a temporary living situation where everybody's intent, everybody's understanding is that these women are moving out. Even when the women were kicked out of the house, I believe it was Alexandra, she said, we packed our stuff quickly and left. And if these women were living there on a permanent basis, what's the likelihood that they would be able to just take their things and leave on the drop of a hat? If they were really sharing the dwelling with the kids. In sum, this is not the kind of relationship that the domestic violence statute was intended to cover. The complainants in this case were merely temporary house guests, and they were not household members under the statute. Does this court have any further questions on this? No, we don't. You'll have the opportunity for a rebuttal. Ms. McCormick. Your Honor, this is an issue of reasonable doubt. And this court is to look at the evidence in the light most favorable to the state. And the presumption is that all the contradictions in evidence were resolved in favor of the states. And in this case, I'll get to that in a second. The factors that a court considers about whether a person is a household member or not are set out in People v. Allmore, which is an Illinois Supreme Court case cited by the people. In that case, the Illinois Supreme Court noted that the definition, statutory definition of household member is extremely broad, and that the legislature intended for it to be broad and to take in a myriad of relationships that could be called a household member. And in the definition itself, a household member is defined as, in part, persons who share or have formerly shared common dwelling. Now, in this case, looking at the evidence in the light most favorable to the state, this is what it shows. Well, the factors, I'm sorry, the factors include the amount of time that the persons have resided together. That's one factor. And it's not dispositive, according to Allmore. And there is no length requirement, and there's no bright-line test, like one day more or one day less qualifies it. That's just not the way the factors are looked at. The factors are examined by the totality of the circumstances. Some of the other factors are whether the person had other accommodations, whether they kept personal items there, whether they shared the privileges and duties of the household. And in this case, the defendant's husband testified that the two were temporary houseguests and that they were only permitted to stay for a couple of weeks, and then they, you know, while they could get money, but that it was basically a short-term thing and they were temporary houseguests and they were supposed to get out. That is not what the court credited. Apparently, the court credited Patrick's and Harrison's testimony that the arrangement was an indefinite arrangement. Whose testimony? Did you say they could? Alexandria Patrick's and Mary Harrison's testimony about the length of their arrangement. The court did not credit the husband's testimony about the defendant's husband's testimony that it was just a two-week arrangement or a couple of weeks, a very temporary arrangement. Didn't the court say on the record that a two-week houseguest was a household member in his opinion? Yeah, but it was more. It was a month to two months. If you look at both Harrison's and Patrick's testimony, Patrick said it was a month or two. Harrison said it was two months. But in any event, that's only one fact. And I think the court was correct when they said even – and that was a comment based, I think, on argument. It doesn't really have anything to do with which testimony the court credited. That is, the court was just saying, well, I think even two weeks would be enough. I agree with you. Yeah. Other than the testimony from Mary, for example, she says she can't even remember how long she was there, and that was it. She says about a month or two. Right. The state never asked her any other questions. Yeah, but Mary Harrison's was more definite that it was a couple of weeks. I am talking about Mary. Oh, no. I think it was Alexandria Patrick who said a month or two. But in any event, whether it was two weeks – I just don't see where there was any questioning by the state, or the defense really, about the other factors set forth, like is there any permanency, household chores, taking care of the kids, you know, keys. Well, the questions may not have been direct, but nonetheless, the testimony is there. And that's what this court is looking at when it's doing a sufficiency of the evidence examination, a reasonable doubt examination. And in this case, the testimony that comes out is that it's an indefinite arrangement. Both of them say that, well, I think Harrison was as long as, but Alexandria Patrick was more definite. She said that she and Mary Harrison, the arrangement was that they could live with her, the defendant, as long as we help out and watch the children and everything. What everything is, I don't know. But they did have – they shared in the personal duties of the household, and the arrangement was that they were going to help out with the children. And there was – and crediting their testimony, there's no end date for this. They're saving up money, but it's an indefinite arrangement. They can stay there as long as they help out with the children and everything. They have – as to the second factor, there's testimony that they were told to pack up their things and get out. And from that, it can be given that they had personal items that they kept there. They had no other residence than this place. And they had lived with the defendant and her husband and children in a homeless shelter prior? No, no. They had lived in a homeless shelter prior, but then they came to live with the defendant, her husband, and the children. How – I thought that Ms. Pamela said there wasn't any connection with them prior at all. Did they just knock on the door? Because I thought I read – There is some sort of connection. That they were all in a homeless shelter together. Well, perhaps. In any event, what we're looking at now is did they form a household? Are they household members? And the nature of their relationship before might be somewhat relevant, but the fact is they are living together at this point in time. They – not only do they help take care of the children, and they talk about taking care of the children when the defendant is inebriated. And even after the event, they're taking care of the children and putting them to bed while one of them is trying to write a statement out for the police. They were directed by the defendant to take her husband his lunch, and they drove her car to do so. So they're doing household chores that members of the household would do for each other. He, of course, denied that. What? The husband denied that. I know, but – So we have controversy. Contradictions are resolved in favor of the state when we're looking at a reasonable doubt argument. So what about keys, the fact that they had no keys to the house? It doesn't – well, I mean, you can speculate that they had keys or they didn't have keys. It doesn't come out. They didn't have keys. Perhaps they were chased out of the house without an opportunity to grab purse or keys. The daughter, Kaylee, had a key to get back in. When the police officer asked the defendant if they – if the two women lived there, she said they did. And then for that reason, he let them – he said you can't just evict them. You have to go through eviction processes. So the defendant recognized that in her statement that they – to the police officer that they lived there. In the past tense. What? Which could have also been in the past tense. Well, so anybody who lives in a household for a period of time, in your opinion, should be considered a household? Oh, no, absolutely not. Remember? We're looking at multiple factors. The factors set out in Elmore. And we don't just have a casual relationship here. We have two women that are living with the defendant and her family on an indefinite basis as long as they help out with the children and everything. And they are doing chores at the defendant's direction, taking lunch. They are – that's their only residence. They have personal items there. There's no bright-line rule about how long it takes to establish. So two weeks, two months, either thing that the court credited is sufficient. And it – to show beyond a reasonable doubt that a rational trier of fact on these – on this evidence could have found that they were household members. Thank you. Ms. McCormick, do you have any rebuttals to come on? Thank you, Your Honors. Very briefly, I just wanted to clarify a couple of things. Counsel mentioned that Alexandria said that they could stay there on an indefinite basis. Then on cross-examination, she clearly admits, she says on page C-122, that Charlotte and her husband made it clear that they would have to vacate soon, that they could not stay there long. They had to leave soon. Also, counsel mentioned a quote in Elmore saying that the statutory definition of a household member is broad. But at page 397 of Elmore, the court goes on to say, yes, but it's not so broad that it includes situations like in Young, where the defendant and the victim have no real connection, other than that they spent the same – they slept under the same roof on two occasions. So while the court does say it's broad, it says it's not so broad to cover cases where people are just sharing the same roof for a few times or just a casual acquaintance as in Young. And that's what we have in the instant case. We have a situation that's like Young. Yes, these people are acquaintances. Yes, they know each other. But the state established no connection with these parties. And another thing I wanted to mention, you asked about did these women know Charlotte prior to. The only evidence is that Charlotte met them through a shelter. We don't know anything other than that. The state didn't put on any evidence that there was any kind of connection beyond this, that she met them through the shelter and allowed them to come to stay with her because the evidence was that Mary was kicked out of the shelter and needed a place to go. Also, the state mentioned that these women shared in the household duties. They did chores, and they drove the car and things of that nature. But we have to remember, we have to look at the totality of the circumstances. Here, they had to do those things pursuant to their agreement. In order to live at the kids' residence, they had to help out. This was not a byproduct of an intimate relationship. This was because they needed a place to stay, so they had to do A, B, and C. These women wanted to remain there. That's why they did those things. And, again, I asked this court to look at the totality of the circumstances, something that the trial court neglected to do. The trial court believed that there was a certain period of time that would transform these women into household members, and the court said two weeks is enough. I believe that they are household members. If this court has no further questions, we'd ask that the court reduce the conviction to a simple factor. Thank you, Ms. Conron. Thank you, Mr. McCormick. We will take comment under advisement, and this court stands in recess until tomorrow. All rise.